## OCTOBER TERM, 1852.

ANN HILL, Administratrix, &c., vs. WILLIAM ROBERTSON, Trustee, &c.

Upon the maturity of the debt due in the mortgage, and the failure to pay, the legal title became absolute in R., and that draws after it the right of possession in the property.

The chancellor, in appointing the receiver, merely conferred upon him those

Hill *v.* Robertson.

rights and powers, which a court of law at the same time would have conferred upon the trustee, whose title was sufficient to give him the possession, and, consequently, the use of the property.

A court of equity, regarding the mortgage as only a security for the debt, will permit neither to enjoy a legal right to the prejudice of the other, and will adopt that course of proceeding which will attain the proper end, that is, the payment of what is due the creditor.

Interest is an incident which the law gives the creditor upon a failure of the debtor to pay the principal.

On a failure to pay a mortgage, the legal estate vests in the mortgagee, incident to which is the right of possession.

The law gives legal possession to the person who holds the legal title, but as to all others, it is silent.

It is a matter of discretion who the court will appoint commissioner.

On appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

The facts of the case are contained in the opinion of the court and the briefs filed in the case by the counsel.

*D. C. Glenn,* for appellant.

I wish briefly to notice one single phase of the case. The supplemental answer of Mrs. Hill alleges, (and in this proceeding the allegation must be held for true,) that all the debts due by and from the Commercial Bank have been paid. On this state of facts, what is the law arising? We are earnestly to look at it, and sternly to apply the law.

It is a rule admitted by our courts, that upon the extinction of a corporation, all debts, &c., due to and by it are extinguished and gone. See Chambers's case, 8 S. & M. 47.

The high court has virtually admitted that no debts due by our late banks are collectable, except such as are saved by the act of 1843; and those only saved to the extent of the assets vesting in the statutory trustee. They exist only as against that trustee, and the assets in his hands. Both the debts and credits are saved for the mere purposes of the act, and for those only. 8 S. & M. 50. The common law was changed, but only to the naked extent of the statute. In such cases, the statute abrogatory of the common law is confined rather than extended in

Hill *v.* Robertson.

its construction. The assets were saved solely for the purpose of paying the debts of the corporation. Such is the statute, and such is the view the high court have ever taken of these laws.

It is now too late to question the decisions which even went so far. But now is the time to resist any further extension of these acts. There are no debts of the bank. There are no creditors of the bank. The bank is dead. There is no one to represent it, except statutory trustees, who were appointed solely to pay debts and satisfy creditors, of whom there are now none. Their occupation is gone. It was with much doubt the court came to the conclusion that the assets of the bank were saved, like a "*tabula in naufragio*," as a sort of waif for creditors. The honest and appealing claims of these latter were the lever or fulcrum by which they were induced to prize up the old common law rule of extinction. But now this good and just purpose has been served. The debts are paid. There are no creditors. The trust is discharged and gone. No one now has an interest; no one has a right to sue. The chart of the trustees, the act of 1843, is exhausted, and no one has now power, interest, authority, or right to collect this debt; but it is extinguished.

*A. M. Paxton*, for appellant, filed a labored written argument in the case.

*G. S. Yerger*, for appellees.

A demurrer was filed to the bill. The demurrer was overruled. The defendant prayed an appeal, which was granted on executing a bond in $200, &c. The bond was not given, nor the appeal prosecuted from the demurrer; but the parties proceeded to answer. No final decree was made; but an order was made appointing a receiver. The defendants moved for an appeal in the case, which appeal was granted by the chancellor; but ordering the appeal not to operate as a *supersedeas*. This appeal was not prosecuted. But afterwards, an appeal was applied for, and granted by Judge Sharkey.

It is submitted, that a writ of error will not lie from an order

overruling a demurrer, but only from a final decree. An appeal is allowed before answer in such case; and can only be allowed by the court itself. See act of 1844, Hutch. Code, 781.

Again. An appeal on an interlocutory order is only allowed to be granted by a judge when the chancellor refuses it. Hutch. Code, 759, § 37. Here the chancellor, as the record shows, did not refuse the appeal, but granted it. He refused to let it operate as a *supersedeas*, which was a matter in his discretion; for if an appeal will lie to the appointment of a receiver, without letting, it operates as a *supersedeas*, the property might all be run off before a decision in the high court. The mere refusal to let an appeal operate as a *supersedeas*, which ought to be in all cases appointing a receiver, gives no jurisdiction to the judge to grant an appeal.

I am for Bacon, Lymington, and Robins.

But on the merits of the case, it is clear the order was correct. The bill is filed by Robertson, and Bacon, Lymington and Robins, to foreclose a mortgage made by Isaac Sellars. The bill avers, that part of the notes belonged to the Planters Bank, and that they were transferred, by delivery, to Bacon, Lymington, and Robins, for value. The bill also avers, that the defendant is in possession, using the property; and that the property is not near enough to pay the mortgage debt; and prays for the appointment of a receiver. Sellars died, and Ann Hill was appointed his administratrix.

The answer denies, or rather calls for proof as to the assignment of the notes, by delivery, to Bacon and others; and argues rather than denies the insolvency charged on Sellars. It also says, that the property purchased by Sellars, and for which he gave the notes on the mortgage, had a large incumbrance on it, held by H. K. Moss & Co.

1. The notes in the case of Bacon and others were produced by them, and filed, and are in the record. It is settled by two cases in this court, that where a party is in possession of a note payable to order, without indorsement, that the possession is *primâ facie* evidence of a transfer for value, and will authorize the holder to sue thereon. 1 Howard, R. 519; 2 Ib. 642.

2. The mortgage was forfeited, and the mortgagees were

entitled to the possession; the legal title was in the mortgagee. The executrix, Ann Hill, had no right to the possession; the possessory right was in the mortgagee, and, in fact, vests the title, subject alone to redemption before a foreclosure.

3. But in this case, the debts actually due, and mentioned in the mortgage, with interest, amount to about $110,000. The deposition of Farrar proves that all the property in the mortgage is not worth more than $50,000. In such case, the chancellor must always appoint a receiver, in order that the hire and rents, &c., may be applied to the mortgage debt. Authorities need not be quoted for this.

4. Ann Hill claimed the right in the chancery court to appeal without security, as she was executrix. The reason why an executor is allowed to appeal without security is, because he is not personally responsible; and having given security for assets, &c., no other is required. But in this case, the mortgaged property was not assets for the payment of creditors generally; and if she run off, or carried off the slaves, she would be personally responsible. Her securities would not be bound; and, moreover, the record does not show a bond for more than $10,000. To have let her remain in possession would have been to lose all the slaves.

*G. L. Potter*, for appellees.

This was a bill of foreclosure filed by appellees against Isaac Sellars, in his lifetime. Mortgage of lands, slaves, &c. Sellars died, and the cause was revived against his heirs and administratrix. The bill is sworn to, and shows that the mortgaged property is wholly inadequate to pay the mortgage debts, prays for a receiver, &c. Sellars answered the bill and admitted all the facts alleged, except as to insufficiency of the estate, which he evaded. He attempts to set up outstanding incumbrances, and obtain a rescission of the contract for purchase of the property, and out of which the mortgage debt originated. But he states no facts on which relief can be granted; he in effect asserts that he purchased at trust sale; he does not pretend there was any fraud or misrepresentation, does not say whether he took a quitclaim deed or how it was, there is but the charge

that he gave the notes for the .property, and that it is incumbered. This is palpably insufficient.

Mrs. Hill, administratrix, also answered. She admits that the estate is insolvent. The answers do not aver that the outstanding claims are valid, but merely assert that claims are made. Hughes has sued, and McMurtrey has attempted to sell, and that is all. It is true they say Moss has a decree, but the deposition of Farrar shows that Moss has released his interest, and now claims nothing. p. 67. The deposition of Farrar also shows the insufficiency of the mortgaged estate. Motion was made by complainants for a receiver; notice thereof was duly executed. p. 46, 47. The motion was sustained and a receiver appointed of the realty and personalty, whereupon Ann Hill, administratrix, appealed.

We can see no grounds for this appeal. There is no pretence to say that the personal estate mortgaged is sufficient to pay our demands; and it is to be first subjected to pay the debts. The heirs have a right to insist that the slaves be first sold, that their hires be secured, to pay the complainants; Mrs. Hill, administratrix, cannot complain as to a receiver for the realty. Can she complain that a receiver is appointed over the mortgaged slaves? The mortgage is forfeited, and the estate of the mortgagee is absolute at law; he is entitled to immediate possession and to hires. Mere insufficiency of the estate is enough to sustain the motion. *Bank of Ogdensburg* v. *Arnold*, 5 Paige, 42. But it may be said, it should also appear that mortgagor is insolvent; this we do show, but deny the rule to require such showing. A court of chancery will never put a creditor to a suit at law for the balance of the debt, when there is an available fund to pay it. A different rule might prevail in States where, (as in New York,) the creditor has execution, under the decree, for the balance not paid by the sale of the mortgaged property; but the rule here is otherwise, no such execution is permitted. If we could have execution upon the decree, there might be strong grounds to say that no receiver should be appointed without a showing of insolvency; a showing that execution would be unavailing. But the answer is conclusive that the whole estate is forfeited, and mortgagor has no right to

32 *

retain the estate or its income until he pays the debt; the creditor has a right to demand under the mortgage full payment; and if the property itself is insufficient, he has a right to demand the preservation of rents and hires.

On the making of this order, Mrs. Hill offered to give bond, but was not prepared to do so. Her offer was as to realty and personalty; as to the realty, she had no rights. If she would give security, she was too late; she should have come in before the receiver was appointed. It was discretionary with the chancellor to permit her to give security as to the personalty or not. Her administration bond is no security to us; we could not compel her, as administratrix, to pay us the rents and hires as preferred creditors.

Mr. Justice FISHER delivered the opinion of the court.

This is an appeal from an interlocutory decree of the chancellor appointing a receiver.

The complainants below filed their bill in the superior court of chancery against Isaac Sellars, the intestate, to foreclose a certain mortgage by him executed on the land and slaves therein specified. The bill alleges the insolvency of the mortgagor, and the insufficiency of the property to pay the debts secured, which appear to be large.

The execution of the mortgage and notes therein named, is admitted by the answer, but the insolvency is denied. This denial, however, is argumentative, and the question of solvency or insolvency is made to depend upon the result of this and two other suits in the superior court of chancery. But one deposition appears to have been taken, and it shows that the property covered by the mortgage is not worth more than $50,000, while the debts secured greatly exceed this sum.

The appellant filed a supplemental answer, after she was admitted a defendant to the bill, setting up, among other things, that the complainant Robertson, as trustee of the Commercial Bank of Natchez, had been discharged, and satisfied all debts and liabilities of said bank; and having thus satisfied the purposes of his trust, he had no power or authority to collect the debts secured by the mortgage. This part of the answer is in

no manner responsive to any allegation in the bill, and is wholly unsustained by proof; till proven, it presents only a question of fact, and therefore calls for the application of no legal principle. The court can only apply the law to facts which have been admitted by the pleadings of the parties, or established by competent testimony. The answer presenting facts which are not established by either of these modes, must be excluded from our present examination; and we will, therefore, examine the case as it appears by the bill, answer, and deposition.

The bill and answer agree as to the debt secured, and the execution of the mortgage to secure it; the deposition settles the question of fact as to the value of the property, and shows it to be wholly insufficient to pay the debt due. The case, then, stands thus. The pleadings of the parties agree as to the execution of the mortgage and the notes; also as to the amount of the debt due. The parties disagree as to the value of the property, and the complainant has introduced proof which settles the issue in this respect. Upon this state of facts the present controversy must be decided.

The debt is very large, and bearing interest. Equity not only looks to present security, but to security which will be sufficient when the final decree shall be pronounced. The property may have been sufficient to accomplish the original design of the parties, to pay the debt and interest at maturity, but it by no means follows that it will continue sufficient for this purpose; to do so, it must increase in value in proportion as interest accumulates on the debt. This is not to be expected, as the income is not employed for this purpose. The property for its increase in value must depend upon the fluctuations of the market, and other causes which would aid but little, without a judicious investment of the annual income.

Independent, however, of the plain case made by the pleadings and proofs, the complainant may rest his claim to a receiver upon another ground; upon the maturity of the debt and a failure to pay, the legal title became absolute in the complainant. The legal title draws to it the right of possession, which, if enjoyed, would give the income of the property to the mortgagee, to keep down the annual interest; and the surplus, if

Hill *v.* Robertson.

any, to apply to the principal. The chancellor, in appointing the receiver, merely conferred upon him those rights and powers which a court of law at the same time would have conferred upon the complainant, whose title was sufficient to give him the possession, and consequently the use, of the property. But equity, looking to the original design of the parties, in creating the mortgage, as only a security for a debt, will permit neither to enjoy a legal right to the prejudice of the other, and will adopt that course of proceeding which will attain the proper end. This end is, the payment of whatever is justly due of principal and interest to the creditor. The property must be managed so as to accomplish this end. Under no view of the case can it be considered more than sufficient to pay the principal. Interest is an incident which the law gives the creditor, upon failure of the debtor to pay the principal. Upon this failure to pay, the legal estate vests in the mortgagee, as an incident to which is the right of possession, which is necessary to be enjoyed either by the mortgagee himself, or managed for his benefit by the court, to meet the debt which the law creates in the shape of interest, and which we must suppose was not provided for in the mortgage ; because it could only accrue by a breach of contract, on the part of the debtor, in failing to pay at the time stipulated ; and the law, presuming that every man intends to perform in good faith his contracts, would not presume that the mortgage was more than a sufficient security for the principal and interest to maturity of the debt.

Other questions are made against the appointment of the receiver ; but they are not important to be noticed at this time. We will, however, notice one. The appellant applied for the appointment, and offered to execute a bond with good security, to account for the income of the property, which the chancellor refused to receive. The chancellor, in making the appointment, should have been guided by a sound discretion, and, of course, was at liberty to exercise it in making the selection. The law gives the possession to the person who holds the legal title ; as to all others it is silent. The appellant could certainly present no greater claims to the appointment than the appellee. It was in the discretion of the chancellor to disregard the claims of both,

and to appoint a disinterested person. It was a matter of but little moment who was appointed; the same duties had to be performed, and the trust faithfully executed.

Decree affirmed. ·